Kenneth WOOTEN; and Kristi Wooten, Plaintiffs,

v.

Dr. Richard Clay HUDSON, D.O., an individual; Creek Nation Community Hospital; Okfuskee County Hospital Authority; Emcare, Inc.; The Quantum Group, Inc.; The Gould Group, Inc.; and United States of America, Defendants.

No. Civ–98–071–B.

United States District Court, E.D. Oklahoma.

Sept. 30, 1999.

John M. Thetford, Tulsa, OK, Eddie Harper, McAlester, OK, John B. Monnet, Oklahoma City, OK, for Kenneth Wooten, Kristi Wooten, plaintiffs.

Tim N. Cheek, D. Todd Riddles, Stephen E. Blythe, Oklahoma City, OK, for Richard Clay Hudson, Dr., D.O., an individual, defendant.

James M. Kaufman, Oklahoma City, OK, Jessie Huff Durham, Okmulgee, OK, for Creek Nation Community Hospital, defendant.

James M. Kaufman, Oklahoma City, OK, John L. Harlan, Sapulpa, OK, Tonya Klutts Guinn, Okemah, OK, for Okfuskee County Hospital Authority, defendant.

John L. Harlan, Sapulpa, OK, Tonya Klutts Guinn, Okemah, OK, for Okfuskee County, defendant.

Tim N. Cheek, D. Todd Riddles, Stephen E. Blythe, Oklahoma, OK, for Emcare, Inc., The Quantum Group, Inc., The Gould Group, Inc., defendants.

Susan S. Brandon, U.S. Attorney, Muskogee, OK, A. Scott Johnson, Brent L.

Thompson, Oklahoma City, OK, Earl R. Donaldson, Ann C. Fries, Tulsa, OK, Elaine Marzetta Lacy, U.S. Dept. Justice, Torts—Civil, Washington, DC, for United States of America, defendant.

### *ORDER*

BURRAGE, Chief Judge.

This matter comes before the Court on the Petition and Brief for Certification Pursuant to 28 U.S.C. § 2679(d)(3) filed by Defendants on October 13, 1998 (Docket Entry # 71) to which a timely response and reply and supplements thereto were filed. Upon review and consideration of these pleadings, this Court renders the ruling reflected herein.

Plaintiffs commenced this action against Defendants on November 5, 1997 in the District Court in and for Okfuskee County, Oklahoma. Plaintiffs allege that Defendant Dr. Richard Clay Hudson ("Hudson") performed non-consensual, substandard surgery upon Plaintiff Kenneth Wooten's foot on July 30, 1996. Further, on the same day and several times thereafter, Plaintiff Kristi Wooten contends that Hudson engaged in non-consensual sexual intercourse and sodomy with her while she was incapacitated by medication. Plaintiffs also contend that Hudson threatened to kill Plaintiff Kristi Wooten should she reveal his acts. Plaintiffs assert that the Creek Nation Community Hospital (the "Hospital"), for which the United States has been substituted, failed to adequately screen Hudson prior to his hiring, since his medical license had previously been surrendered on two other occasions based upon similar conduct. Plaintiffs also contend that Defendants EmCare, Inc., Quantum Group, Inc. and/or The Gould Group, Inc. (collectively referred hereinafter as "Quantum") failed to adequately screen Hudson prior to hiring him and using him to fulfill their obligation to staff the emergency room at the Hospital. On February 18, 1998, this action was removed to this Court.

Through their Petition, Defendants Hudson and Quantum "appeal" the United States' decision to deny representation to them in this action. Defendants contend that they were employees of the United States at the times of the acts alleged in this action and that all of the events alleged occurred during the scope and course of their employment.

Under the Federal Tort Claims Act (the "FTCA"), the United States is substituted as a party defendant for those parties who are certified by the Attorney General of the United States to have acted within the scope of federal employment at the time of the commission of the alleged tort. 28 U.S.C. § 2679(d)(1). If the Attorney General declines to so certify, the affected defendant may petition the district court to do so. 28 U.S.C. § 2679(d)(3).

■ At the outset, this Court concurs with the United States' analysis of the precise relief which may be sought by Defendants in through their Petition. The United States has denied that Hudson committed the alleged acts against Plaintiffs while he was acting in the course and scope of his employment with the federal government and, therefore, has denied that it may be substituted for Defendants in this action. Although throughout their pleadings on the issue Defendants refer to the United States' obligation to provide legal representation to them, in fact, if certification is ordered by this Court, the United States would be substituted for the party Defendants and proceed in that capacity. This Court cannot review the decision of the United States declining to provide legal representation to a party, only the certification for substitution purposes under the FTCA. *See e.g., Falkowski v. Equal Employment Opportunity Commission,* 783 F.2d 252, 253 (D.C.Ct.App.1986). This Court now addresses the certification of Defendants as federal employees.

Pursuant to the Self–Determination Act (the "Act"), the Muskogee (Creek) Nation and the United States entered into a self-determination contract for Indian Health Service Programs. Hudson was employed by the Hospital to perform surgery and to

evaluate and treat patients in the outpatient clinics. Additionally, the Hospital entered into a Hospital Emergency Care Agreement with Quantum. Quantum was required under this agreement to provide staffing for the emergency room at the Hospital. The agreement also provided that all physicians must carry medical malpractice insurance.

■ It is apparent from the pleadings that Hudson acted in two capacities in relation to his employment at the Hospital—(1) from the hours of 6:00 a.m. to 6:00 p.m., Hudson was directly employed with the Hospital under a personal services contract and (2) from the hours of 6:00 p.m. to 6:00 a.m., Hudson was employed by Quantum which contracted with the Hospital to provide an emergency room physician. Clearly, while he acted as an employee of the Hospital, Hudson and the Muskogee (Creek) Nation were deemed a part of the Public Health Service for purposes of carrying out the Self–Determination Contract with the United States. As such, his actions would be covered by the FTCA. Specifically, the Act provides that:

> [W]ith respect to claims by any person ... for personal injury ... an Indian tribe, a tribal organization or Indian contractor carrying out a contract, grant agreement, or cooperative agreement under this section ... is deemed to be part of the Public Health Service in the Department of Health and Human Services while carrying out any such contract or agreement and its employees (... including an individual who provides health care services pursuant to a personal services contract with a tribal organization for the provision of services in any facility owned, operated, or constructed under the jurisdiction of the Indian Health Service) are deemed employees of the Service while acting within the scope of their employment in carrying out the contract or agreement ...
> 25 U.S.C. § 450f(d).

Thus, since it is undisputed that a self-determination contract existed between the Muskogee (Creek) Nation and the Sec-

retary for the establishment of health care for the members of the Nation, the employees of the Nation through the Hospital, such as Hudson is covered under the FTCA for acts done within the scope of their employment.

However, FTCA coverage for the acts that allegedly occurred while Hudson was under contract with Quantum which, in turn, was under contract to provide staffing for the emergency room at the Hospital are not so clearly covered. An analysis of the language of § 450f(d) and the associated definitions is required. Coverage is extended to an Indian tribe, a tribal organization or Indian contractor carrying out a contract "under this section." Necessarily, the contract at issue must be a self-determination contract since that is the type of agreement covered by § 450f.

A "self-determination contract" is defined under the Act as

> a contract (or grant or cooperative agreement utilized under section 450e–1 of this title) entered into under part A of this subchapter between a tribal organization ant the appropriate Secretary for the planning, conduct and administration of programs or services which are otherwise provided to Indian tribes and their members pursuant to Federal law ...
> 25 U.S.C. § 450b(j).

Under the Act, a "tribal organization" is defined as

> the recognized governing body of any Indian tribe; any legally established organization of Indians which is controlled, sanctioned, or chartered by such governing body or which is democratically elected by the adult members of the Indian community to be served by such organization and which includes the maximum participation of Indians in all phases of its activities ...
> 25 U.S.C. § 450b(*l*).

■ By its very definition, a private individual cannot enter into a self-determination contract. Rather, only a tribal organization and the Secretary may do so.

*FGS Constructors, Inc. v. Carlow,* 64 F.3d 1230, 1234 (8th Cir.1995). Consequently, FTCA liability will only be conferred upon the United States when based upon contracts entered into by a tribal organization and the Secretary of Health and Human Services. *Id.; Goodthunder v. Na'nizhoo-zhi Center, Inc.,* 1995 WL 865870, *3 (D.N.M.); *Comes Flying v. United States,* 830 F.Supp. 529, 530 (D.S.D.1993). Thus, since the contract entered into by Hudson with Quantum and the contract between Quantum and the Hospital do not meet the definition for a self-determination contract, FTCA protection is not afforded them and they are not entitled to have the United States substituted for them in this action.

The portion of § 450f(d) relied most heavily upon by Hudson and Quantum is that which purports to provide FTCA protection to an "individual who provides health care services pursuant to a personal services contract with a tribal organization" for a facility under the Indian Health Service. However, this language provides little solace for Hudson and Quantum. By its clear and unambiguous terms, the statute requires that the individual must be a party to a contract with a tribal organization. For his services after 6:00 p.m. in the Hospital's emergency room, Hudson has only contracted with Quantum, which is not a tribal organization. Further, Quantum has only contracted with the "Creek Nation Community Hospital" under the Hospital Emergency Care Agreement, which also does not meet the definition of a tribal organization.[1] Therefore, even under Hudson and Quantum's "plain reading" argument, they are not entitled to FTCA protection.

Additionally, for the first time in their reply to the United States' response, Hudson and Quantum contend that Hudson should be considered an employee of the federal government due to the level of supervision exercised by the Hospital over his actions. Hudson and Quantum state that under the agreement between Hospital and Quantum, Quantum is prohibited from exercising any control over the physicians it provides in relation to the "mode, manner, or means by which the physician shall perform their duties in providing emergency department coverage." Hudson and Quantum characterize Quantum's role in the process as a scheduling agent.

 Initially, this Court finds that the raising of this issue in a reply in the first instance is improper, since the United States has not been permitted to respond to this new allegation. However, even on the merits, this basis for substitution of the United States for Hudson must fail. In the Tenth Circuit, the crucial inquiry that must be made in distinguishing an independent contractor from a federal employee is "whether the Government supervises the day-to-day operations of the individual." *Lilly v. Fieldstone,* 876 F.2d 857, 858 (10th Cir.1989) citing *Lurch v. United States,* 719 F.2d 333, 337 (10th Cir.1983). Several factors have been considered in making this determination, including: (1) the intent of the parties; (2) whether the United States controls only the end result or may also control the manner and method of reaching the result; (3) whether the person uses his own equipment or that of the United States; (4) who provides liability insurance; (5) who pays social security tax; (6) whether federal regulations prohibit federal employees from performing such contracts; and (7) whether the individual has authority to subcontract to others. *Id.* at 859 citing *Norton v. Murphy,* 661 F.2d 882, 884–85 (10th Cir.1981).

 The record in this case is sparse at best on the level of day-to-day control exercised by the Hospital over Hudson's actions. Hudson relies solely upon the terms of the Hospital Emergency Care Agreement between Quantum and the Hospital. However, Hudson selectively

---

1. This Court also entertains some doubt that Quantum is an "individual" as that term is used in § 450f(d) or that the Hospital Emer-

gency Care Agreement constitutes a "personal services contract."

quotes from the relevant portions of the agreement. On the issue of supervision, the agreement provides:

> The medical services to be performed by the physicians will be specified by the Hospital but shall be performed by the physicians as independent contractors under and subject to the general supervision of the Hospital, its medical staff, and in compliance with the rules and regulation of the Hospital. Quantum is not engaged in the practice of medicine and does not and will not exercise control of any nature, kind, or description relating to the mode, manner, or means by which the physicians shall perform their duties in providing emergency department coverage herein.

As in the *Lilly* case, the agreement is so ambiguous on the parties' intent as to the level of control to be exercised by the Hospital that it is accorded no weight in the control determination. *Id.* Hudson bears the burden of proving his status under the FTCA. Having been presented with no other evidence concerning the day-to-day control exercised by the Hospital over Hudson's activities, this Court must conclude that he was not a federal employee for purposes of substitution under the FTCA.

Based upon this ruling, this Court concludes that the United States should be substituted for Hudson in relation to his actions with Plaintiffs between 6:00 a.m. and 6:00 p.m. as a federal employee and Hudson and Quantum are responsible for all actions occurring between 6:00 p.m. and 6:00 a.m. It is impossible for this Court to determine at this stage as the United States suggests that all actions taken against Plaintiffs by Hudson occurred while he served the emergency room at the Hospital. Conflicting evidence exists in the record on this point. The evidence must be developed further before this issue may be determined conclusively. Further, this Court will not determine on the scant record before it now as to whether all of Hudson's actions were taken in the course and scope of his employment with the Hospital. Again, additional development of the record will be necessary before this determination can be made.

IT IS THEREFORE ORDERED that the Petition for Certification filed by Defendants Richard Clay Hudson, D.O., EmCare, Inc., the Gould Group, Inc. and the Quantum Management Group, Inc. on October 13, 1998 (Docket Entry # 71) is hereby **GRANTED,** in part, in that the United States will be substituted for Defendant Hudson for all actions taken by him against Plaintiffs between the hours of 6:00 a.m. and 6:00 p.m. However, the Petition is **DENIED** as it relates to Hudson's activities between 6:00 p.m. and 6:00 a.m. and based upon the control exercised by the Hospital over Hudson.

IT IS SO ORDERED.